ACCEPTED
14-13-01078-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
2/20/2015 6:13:14 PM
CHRISTOPHER PRINE
CLERK

## NO. 14-13-01077-CR, 14-13-01078-CR

IN THE COURT OF APPEALS

FOURTEENTH JUDICIAL DISTRICT OF TEXAS

AT HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
2/20/2015 6:13:14 PM
CHRISTOPHER A. PRINE
Clerk

_____

JACQUALIEN GRANT
Appellant,

VS.

THE STATE OF TEXAS,
Appellee.

_____

ON APPEAL FROM CAUSE NOS. 1386096 and 1386097
IN THE 185TH DISTRICT COURT OF HARRIS COUNTY, TEXAS.

_____

APPELLANT'S SUPPLEMENTAL BRIEF
_____

**CARMEN M. ROE**
TBN: 24048773
440 Louisiana, Suite 900
Houston, Texas 77002
713.236.7755
713.236.7756 Fax
**ATTORNEY FOR APPELLANT**
[ON APPEAL ONLY]

**ORAL ARGUMENT REQUESTED**

1

# IDENTIFICATION OF INTERESTED PARTIES

Pursuant to TEX. R. APP. P. 28.1(a), a complete list of the names and addresses of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Complainants, victims, or aggrieved party:**
Irene Garza

**Counsel for Defendant**:
Mr. Allen M. Tanner
917 Franklin Street, Suite 550
Houston, Texas 77002

**Counsel on Appeal for the Appellant**:
Carmen M. Roe
440 Louisiana, Suite 900
Houston, Texas 77002

**Counsel for the State**:
Mr. Coby Leslie
Mr. David Abrams
Harris County District Attorney's Office
1201 Franklin
Houston, Texas 77002

**Trial Judges**:
Honorable Susan Brown
Presiding Judge, 185th District Court
Harris County, Texas

# TABLE OF CONTENTS

Page

IDENTIFICATION OF INTERESTED PARTIES ...................................... 2

INDEX OF AUTHORITIES .......................................................... 6

STATEMENT REGARDING ORAL ARGUMENT ................................... 9

STATEMENT OF THE CASE ........................................................ 9

APPELLANT'S POINT OF ERROR ............................................... 10

SUMMARY OF THE ARGUMENT.............................................. 10

STATEMENT OF THE FACTS .................................................... 11

ARGUMENT AND AUTHORITIES ............................................... 13

POINT OF ERROR NUMBER ONE ............................................. 13

THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING
APPELLANT'S OBJECTION TO THE ADMISSION OF A PRIOR
EXTRANEOUS OFFENSE, THAT WAS NOT RELEVANT APART FROM
SHOWING CHARACTER CONFORMITY, AND ANY RELEVANCE IT
HAD WAS OUTWEIGHED BY UNFAIR PREJUDICE.

A. Standard of Review: Abuse of Discretion ................................. 13

B. 404 (b): Extraneous Offense is Inadmissible as Conformity Evidence... 15

   1. State failed to Demonstrate that the Extraneous Offense was
      Proffered for a Relevant Purpose ..................................... 17

   2. State Failed to Demonstrate Relevance of Extraneous to Issue of
      Consent ................................................................ 20

   3. State Failed to Demonstrate Relevance of Extraneous to Issue of
      Fabrication…………………………………………………………………..21

4. State Failed to Demonstrate Relevance of Extraneous to Show Handiwork of Appellant ...................................................................... 24

C. The Specifics of the "Manner" or "the Type of Crime"……………..…..27

1. "The Way he Targeted Her" ........................................................ 28

2. "The Specific Threat he Made" ................................................... 28

3. "Close Proximity of the Crimes" ................................................ 28

4. "Both Offenses Occurred within Weeks of Each Other" ............... 28

D. Rule 403: The Danger of Unfair Prejudice.................................... 32

1. The Strength of the Evidence in Making a Fact More or Less Probable .................................................................................. 32

2. The Potential the Extraneous Offense will Impress the Jury in Some Irrational but Indelible Way ............................................... 33

3. The Amount of Time the Proponent Needed to Develop the Evidence………………………………………………………34

4. The Strength of the Proponent's Need for this Evidence to Prove a Fact of Consequence……………………………………......…35

E. The Improper Admission of Extraneous Evidence Affected Appellant's Substantial Rights…………………………………………......…………36

1. Severity of the Misconduct.......................................................... 38

2. Steps Taken to Cure the Misconduct............................................ 39

3. Certainty of Conviction Absent Error………………………......…41

CONCLUSION AND PRAYER ................................................................ 43

CERTIFICATE OF SERVICE................................................................. 44

CERTIFICATE OF COMPLIANCE ........................................................... 44

# INDEX OF AUTHORITIES

**CASES**                                                             **PAGE**

*Albrecht v. State*, 486 S.W.2d 97 (Tex. Crim. App. 1972)………………………..16

*Avila v. State*, 18 S.W.3d 736 (Tex. App.- San Antonio, 2000)…………....…..16

*Booker v. State*, 103 S.W.3d 251 (Tex. App.-Forth Worth, 2003)………………..37

*Brown v. State*, 978 S.W.2d 708 (Tex. App.- Amarillo, 1998)…………………..37

*Burnett v. State*, 88 S.W.3d 633 (Tex. Crim. App. 2002)………………………..37

*Cobb v. State*, 503 S.W. 2d 249 (Tex. Crim. App. 1973)………...…………....…39

*Collazo v. State*, 623 S.W.2d 647 (Tex. Crim. App. 1981)………………………30

*Curtis v. State*, 89 S.W.3d 163 (Tex. App.- Fort Worth 2002)………………….41

*Daggett v. State*, 187 S.W.3d 444 (Tex. Crim. App. 2005)…………………..13,15

*De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009)………………..14,16

*Delane v. State*, 369 S.W.3d 412 (Tex. App.- Houston [1st District] 2012)……..38

*Ford v. State*, 484 S.W.2d 727 (Tex. Crim. App. 1972)………………….…*Passim*

*Jackson v. State*, 320 S.W.3d 873 (Tex. App. – Texarkana, 2010)…………*Passim*

*Johnson v. State*, 145 S.W.3d 215 (Tex. Crim. App. 2004) ………………..15,37

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997)……………………..36

*United States v. Lane*, 474 U.S. 438 (1986)…………………………….…37

*Martin v. State*, 173 S.W.3d 463 (Tex. Crim. App. 2005)…………………*Passim*

*McGautha v. California*, 402 U.S. 183 (1971)…………………………15

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991)…………...…*Passim*

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)……………………37,41

*Nelms v. State*, 834 S.W.2d 110 (Tex. App.- Houston [1st District] 1992)……...38

*Owens v. State*, 827 S.W.2d 911 (Tex. Crim. App. 1992)……………….…*Passim*

*Pollard v. State*, 255 S.W.3d 184 (Tex. App.- San Antonio, 2008)……24,34,39,43

*Rubio v. State*, 607 S.W.2d 498 (Tex. Crim. App. 1980)……………………….17

*Rhyne v. State*, 387 S.W.3d 896 (Tex. App.-Fort Worth 2012)………………....38

*Sauceda v. State*, 129 S.W.3d 116 (Tex. Crim. App. 2004)…………………….13

*Seguendo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008)……………………26

*Sims v. State*, 273 S.W.3d 291 (Tex. Crim. App. 2008)………………………...39

*Taylor v. State*, 920 S.W.2d 319 (Tex. Crim. App. 1992)………………………25

*United States v. Walker*, 722 F.2d 1172 (5th Cir. 1985)…………………………14

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992)…………………………....…14

*West v. State*, 124 S.W.3d 732 (Tex. App.-Houston [1st District] 2003)………..43

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)……………………….....…14

OTHER SOURCES:

TEX. R. EVID. 401…………………………………………...……....17

TEX. R. EVID. 403………………………………………………...……10,31

TEX. R. EVID. 404(B)………………………………………………*Passim*

TEX. R. APP. P. 39.1……………………………………………………………9

TEX. R. APP. P. 44.2 (B)………………………………………………………36

## STATEMENT REGARDING ORAL ARGUMENT

This supplement brief presents an important issue regarding the admission of a prior sexual assault that occurred two weeks before the charged offense that was inadmissible because it did not meet any of the 404(b)(2) requirements permitting the use of such evidence at trial. Because argument would assist this Court in its decision-making process, argument is warranted in this matter. See TEX.R.APP.P. 39.1.

## STATEMENT OF THE CASE

Appellant was charged by indictment with the felony offenses of aggravated kidnapping in Cause No. 1386096 and sexual assault in Cause No. 1386097[1]. (1CR[2] at 8; 2CR at 8; 4 RR 5-10), alleged to have been committed on December 13, 2012. On November 7, 2013, the jury found Appellant guilty of both charges, (6 RR 32-33), and assessed punishment at twenty (20) years imprisonment for the sexual assault charge, and life in prison for the aggravated kidnapping charge. (6 RR 32-33). The trial courts Certification of the Defendant's Right to Appeal, (1CR at 125; 2CR at 120), and notice of appeal were timely filed. (1CR at 123; 2CR at 118).

---

[1] Cause No. 1386097 was amended and corrected to charge only sexual assault and not aggravated sexual assault.

[2] "1CR" followed by page number refers to Cause No. 1386096 and "2CR" refers to Cause No. 1386097 followed by page number.

Appellant filed an original Appellant's Brief on April 15, 2014. The State filed its brief on June 18, 2014 and oral argument was scheduled for December 18, 2014. On December 12, 2014, a letter was issued from this Court instructing Appellant to file a brief on the merits, Ander's brief, or motion to dismiss the appeal in Cause No. 14-13-01087-CR. Appellant filed a motion to postpones submission and extend time to file a brief on the merits. After this Court granted an extension of time, Appellant files this Supplemental Brief on guilt-innocence in Cause Nos. 14-13-01077-CR and 14-13-01087-CR.

## APPELLANT'S POINT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S OBJECTION TO THE ADMISSION OF A PRIOR EXTRANEOUS OFFENSE, THAT WAS NOT RELEVANT APART FROM SHOWING CHARACTER CONFORMITY, AND ANY RELEVANCE IT HAD WAS OUTWEIGHED BY UNFAIR PREJUDICE.

## SUMMARY OF ARGUMENT

The trial court abused its discretion in overruling Appellant's objection to the admission of an extraneous offense in violation of Texas Rules of Evidence Rules 404(b) and 403 because the prior sexual assault was not relevant for the permissible purpose proffered by the state, did not tend to make any issue of fact of consequence more or less likely, and was not sufficiently similar to show the modus operandi of Appellant. Therefore, the only relevant purpose in admitting the extraneous offense evidence was to show Appellant was a criminal generally, an

10

impermissible purpose, and thus its probative value was substantially outweighed by the danger of unfair prejudice. The trial court's ruling admitting the extraneous offense evidence was an abuse of discretion and outside the zone of reasonable disagreement because it was "… without reference to any guiding rules and principles." *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1991)(op. on reh'g).

## STATEMENT OF FACTS

The state's case in chief maintained that Appellant kidnapped and sexually assaulted Irene Garza. Ms. Garza testified that although she previously worked as an escort, she was neither working on the night in question, nor had she worked as an escort in the months leading up to this incident. (4 RR 41). Instead, Ms. Garza testified that her interaction with Appellant began after she arbitrarily chose to pull into an apartment complex – around 1:00-2:00 p.m.—so that she could consult her cell phone's GPS.

At the apartment complex, Ms. Garza parked her vehicle when Appellant opened the door and told her, with his hand in his pocket, to do what he said. (4 RR 24). Ms. Garza testified she did not see a weapon. (4 RR 24). She exited her vehicle and was escorted into an empty apartment, where she engaged in non-consensual intercourse with Appellant, and another man. (4 RR 30-35). Thereafter, Ms. Garza testified that both men instructed her to wash herself repeated, before

11

leaving, and also remarked that if she went to the authorities, they would use the information from her phone to hurt her family. (4 RR 41). She subsequently left, drove to McDonald's and called 911. (4 RR 44-45).

During cross-examination, trial counsel sought to introduce a series of exhibits that showed Ms. Garza was working as an escort at the time of the offense. The trial court admitted evidence of Ms. Garza's advertisements as an escort because it was relevant to the issue of consent, but redacted the photographs featured on the advertisement as not relevant to any issue. (4 RR 70 –79).

Based on trial counsel's cross examination of Ms. Garza, the state argued that the door had been opened to extraneous evidence of a prior sexual assault because counsel raised the issue of consent and to rebut the defensive theory of fabrication. (4 RR 106). The state argued,

> "The specifics of the manner, the type of crime, the way he targeted her and more specifically the specific threat that he made shows identity, a specific modus operandi, the close proximity of where these crimes occurred to each other, which we have the map that we can show, within less than a mile apart, within blocks of each other, within weeks of each other.
>
> Both – the DNA comes back on both individuals to him and because the defense has, through cross-examination, opened the door by raising issues of fabrication and consent by bringing up her past sexual history as an escort, that thereby invokes, as the brief says, the doctrine of chances and allows us to put Ms. Marchand as evidence that he committed this crime."

(4 RR 107-108).

12

The trial court expressed concerns about the state's theory of admissibility, which the state reiterated was fabrication and consent. (4 RR 111-12). The court ultimately relied on *Martin v. State*, 173 S.W.2d 463 (Tex. Crim. App. 2005) and *Daggett v. State*, 187 S.W.3d 444 (Tex. Crim. App. 2005), in holding the extraneous of Ms. Marchand was admissible, concluding that when the defense brought out the issue of fabrication or consent, the jury was entitled to hear from another unrelated complaining witness. (4 RR 110).

## ARGUMENT AND AUTHORITIES

## POINT OF ERROR NUMBER ONE

THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S OBJECTION TO THE ADMISSION OF A PRIOR EXTRANEOUS OFFENSE, THAT WAS NOT RELEVANT APART FROM SHOWING CHARACTER CONFORMITY, AND ANY RELEVANCE IT HAD WAS OUTWEIGHED BY UNFAIR PREJUDICE.

### A. Standard of Review: Abuse of Discretion

This Court reviews the admissibility of an extraneous offense under an abuse of discretion standard. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). "Extraneous-offense evidence is admissible under both Rules 404(b) and Rule 403 if that evidence satisfies a two-prong test: whether the extraneous offense evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and whether the probative value of the evidence is not substantially outweighed by unfair prejudice." *Martin v. State*, 173

13

S.W.3d at 467. Appellate courts should uphold a trial court's ruling on the admissibility of evidence as long as it is within the zone of reasonable disagreement. *Id*. A trial court's ruling is generally within this zone if the evidence shows that, (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). "A trial court abuses its discretion and goes beyond the zone of reasonable disagreement in evidentiary rulings when it acts without reference to any guiding rules and principles." *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1991)(op. on reh'g).

While the abuse of discretion standard is deferential, it does not insulate the trial court's decision from reversal. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)(op. on rehr'g). "'Abuse of discretion' is a phrase which sounds worse than it is. The term does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge." *United States v. Walker*, 772 F.2d 1172, 1176 n. 9 (5th Cir. 1985). A trial court lacks the discretion to determine what the law is, or in applying the law to the facts, and has no discretion to misinterpret the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "But discretion, to be worthy of the name, is not unchanneled judgment; it is judgment guided by reason

and kept within bounds. Otherwise, ... it is 'the law of tyrants: It is always unknown.'" *McGautha v. California*, 402 U.S. 183, 285 (1971)(Brennan, J., dissenting); *see also Wilton v. Seven Falls Co.,* 515 U.S. 277, 289 (1995)(review for abuse of discretion is not "tantamount to no review at all").

### B. 404(b): Extraneous Offense is Inadmissible as Conformity Evidence

"It is axiomatic that that evidence of other offenses is not generally admissible as evidence of guilt." *Ford v. State*, 484 S.W.2d 727, 729 (Tex. Crim. App. 1972). TEX.R.EVID. 404(b). Similarly, an accused must be tried only for the offense he is charged and must not be tried for a collateral crime, or for being a criminal in general.

> Generally, evidence of extraneous offense may not be used against the accused in a criminal trial … While such evidence will almost always have probative value, it forces the defendant to defend himself against uncharged crimes as well as the charged offense and encourages the jury to convict a defendant based upon his bad character, rather than proof of the specific crime charged.

*Jackson v. State*, 320 S.W.3d 873, 882(Tex. App. – Texarkana, 2010)(extraneous was not sufficiently similar for admissibility to prove intent); *citing Daggett v. State*, 187 S.W.3d 444, 450-51 (Tex. Crim. App. 2005)(footnotes omitted).

Rule 404(b) provides that extraneous evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Johnson v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004), quoting Rule 404(b). This list is

15

illustrative, however, and extraneous evidence may also be admissible to rebut a defensive issue that negates any element of the offense. *Martin v. State*, 173 S.W.3d at 467–68; *De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009). Therefore, a "party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *De La Paz v. State*, 279 S.W.3d at 343. The Court of Criminal Appeals has said that, "[e]vidence of other crimes committed by the accused may be admitted… where such evidence is shown to be both material and relevant to a contested issue in the case." *Avila v. State*, 18 S.W.3d 736, 740 (Tex. App. – San Antonio, 2000), citing *Albrecht v. State*, 486 S.W. 2d 97, 100 (Tex. Crim. App. 1972). So too, in *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992), the Court observed that "[e]vidence of a defendant's particular modus operandi is a recognized exception to the general rule precluding extraneous offense evidence, if the modus operandi evidence tends to prove a material fact at issue, other than propensity." Modus operandi refers to "a defendant's distinctive and idiosyncratic manner of committing criminal acts." *Id.* at 914. To be relevant, and therefore admissible, the extraneous offense evidence must have some distinguishing characteristic common both to it and the charged offense for which the accused is on trial. *Ford v. State*, 484 S.W.2d 727, 729 (Tex. Crim. App.

16

1972). If there is no common distinguishing characteristic, "then the evidence is offered only to show that the accused has once committed a crime, and is therefore likely to have committed the principal offense. This is not permitted." *Id*.

The State, as the proponent of any extraneous offense evidence, bears the burden of showing admissibility at trial. TEX.R.EVID. Rules 401, 404(b). To be convicted of sexual assault, the defendant must have engaged in conduct without the complainant's consent. "When the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of [the complainant]. His intent is thereby placed in issue." *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980). The Court has also held that modus operandi encompasses the "doctrine of chances" to show lack of consent in a sexual assault case. *Martin v. State,* 173 S.W.3d 463, 467–68 (Tex. Crim. App. 2005).

### 1. State Failed to Demonstrate that the Extraneous Offense was Proffered for a Relevant Purpose.

Ms. Garza was cross-examined about her work as an escort before, and at the time of the charged offense. The state argued counsel's cross-examination opened the door to otherwise inadmissible evidence of a prior sexual assault. (4 RR 106). The court held the extraneous involving Ms. Marchand was admissible, concluding that when the defense brought out the issue of fabrication or consent on cross examination, the jury was entitled to hear from another unrelated complaining witness. (4 RR 110). The extraneous offense was admitted for its

17

relevance to the issue of consent and fabrication after a finding that this probative value was not outweighed by the prejudicial value of the testimony. (5 RR 26).

In response to trial counsel's objection to Ms. Marchand's extraneous, the state as its proponent was required to demonstrate there was a relevant link between the charged offense and the extraneous, so that it satisfied the relevance exception under Rule 404(b). Instead, the state substantiated its basis by providing the trial court with little more than a recitation of the general exceptions under Rule 404(b) when it argued:

> "The specifics of the manner, the type of crime, the way he targeted her and more specifically the specific threat that he made shows identity, a specific modus operandi, the close proximity of where these crimes occurred to each other, which we have the map that we can show, within less than a mile apart, within blocks of each other, within weeks of each other."

(4 RR 108). The state provided the trial court with generic 404(b) factors, but never provided the link between factors like modus operandi or identity, and the extraneous evidence offered. For example, the state fails to provide specifics facts that support its conclusory assertion that Ms. Marchand was targeted or threatened, or how it shared sufficient similarities to Ms. Garza's allegations. The state further omits how identity, which is not an issue in this case, or modus operandi is applicable, or relevant, to any issue of fact in this case.

The state's mere assertion that the two crimes share a geographic proximity, without more is insufficient. Similarly, the fact that the offenses occurred weeks

18

apart is not a sufficient basis for the trial court to find the exception to 404(b) under "identity, or specific modus operandi". Neither separately, nor conjunctively, do these facts surmount to the heightened threshold of showing Appellant's "handiwork" as required by the case law. Consequently, this Court should find that the state has failed to meet its burden, thereby depriving the trial court of any reasonable basis to admit the extraneous offense for the purpose of showing "identity, a specific modus operandi" exception.

Further, the state argued that Ms. Marchand's extraneous evidence should be admitted, because:

> "Both – the DNA comes back on both individuals to him and because the defense has, through cross-examination, opened the door by raising issues of fabrication and consent by bringing up her past sexual history as an escort, that thereby invokes, as the brief says, the doctrine of chances and allows u to prove Appellant sexually assaulted Ms. Garza by putting forth evidence of Ms. Marchand's unrelated allegations.

(4 RR 108). The State attempts to argue that Appellant's line of questioning related to Ms. Garza's sexual history as an escort translated into Appellant actually raising the issue of fabrication or consent, thereby invoking the doctrine of chances and allowing the state to prove Appellant sexually assault Ms. Garza by offering evidence of Ms. Marchand's unrelated allegation. Contrary to this argument, the state, and not Appellant, is the proponent of the extraneous evidence. Consequently, it is the state that holds the burden of substantiating its relevancy to

19

Ms. Garza's allegations. Merely by claiming Appellant "opened the door" does not permit the state to introduce evidence without first demonstrating how that evidence applies or otherwise "fits" through the opened door. The state, however, failed to make any such showing, and therefore this Court should find that the state's basis for admitting the extraneous evidence was not only premised upon an erroneous interpretation of the doctrine of chances, but also failed to demonstrate any rational connection that would permit a trial court's decision to admit Ms. Marchand's extraneous under a theory of fabrication, consent or the doctrine of chances.

## 2. State Failed to Demonstrate Relevance of Extraneous to Issue of Consent

The state argued the extraneous of Ms. Marchand was relevant to the issue of consent. Consent, or the lack of consent, is an element of sexual assault and aggravated kidnapping. Here, the state proffered Ms. Marchand's extraneous to prove the lack of consent by Ms. Garza. (4 RR 109). The state argued that trial counsel's cross-examination of Ms. Garza about being an escort at the time of the offense opened the door to the prior extraneous and raised the issue of consent[3]. (4 RR 112).

---

[3] Trial insisted at trial that, "he never asked her if she had sex with him. She never identified him or identified who raped her. I never brought up consent. I just asked her about her background information. (4 RR 112).

20

The state never provided any basis for its contention that trial counsel raised the issue of consent in his cross-examination of Ms. Garza. In fact, the state elicited testimony from Ms. Garza that she had previously worked as an escort on direct examination. (4 RR 41). Trial counsel cross-examined her about the fact that she claimed she stopped working as an escort six months before the incident. (4 RR 41; 61). In addition, the state failed to show how Ms. Marchand's sexual assault was relevant to the issue of lack of consent by Ms. Garza. The state as the proponent of the evidence was required to demonstrate the relevance of any extraneous to the trial court. If the state fails to make such a showing, the trial court lacks the basis to admit the evidence. Here, the state never demonstrated to the trial court how Ms. Marchand's extraneous allegation was relevant to prove intent, or the lack of consent, by Ms. Garza. Therefore, the state failed to provide the trial court with a sufficient legal basis to admit the evidence at trial.

3. **State Failed to Demonstrate Relevance of Extraneous to Issue of Fabrication**

The state also claimed the extraneous of Ms. Marchand was admissible to rebut the defensive theory of fabrication. The state again argued that trial counsel opened the door through cross-examination of Ms. Garza about her occupation as an escort in the months leading up the offense. (4 RR 53). On cross-examination, Ms. Garza testified she was an escort for four years and admitted that she had sex with people for money that responded to her online advertisements. (4 RR 41).

21

However, she insisted she was not working as an escort during the six months prior to the incident. (4 RR 41). While she admitted she allowed the photographs featured in the advertisements to be taken, she claimed she did not authorize the posting of her photo to solicit business as an escort in the six months before the incident. (4 RR 61-66; 85). The state specifically argued:

> "Both – the DNA comes back on both individuals to him and because the defense has, through cross-examination, opened the door by raising issues of fabrication and consent by bringing up her past sexual history as an escort, that thereby invokes, as the brief says, the doctrine of chances and allows you to prove Appellant sexually assaulted Ms. Garza by putting forth evidence of Ms. Marchand's unrelated allegations.

***

(4 RR 108)

> And it is to rebut the implication raised by cross of fabrication, which he raised by going through the details and pointing out the details that were inconsistent from one telling to the next and also the issue of consent, which he raised through the issue of the implication of her being a continued escort. And many of these cases are very closely directly on point on that issue, Judge.

***

(4 RR 112).

The so-called fabrication elicited on cross-examination was that Ms. Garza lied about being an escort in the six months leading up to the offense. (4 RR 85). Trial counsel impeached her testimony using "backpage" advertisements that featured her as an escort during the six months prior to the offense. The state objected to the

22

admission of the "backpage" ads as not relevant. Trial counsel argued these exhibits were relevant to show consent. (4 RR 72). The trial court admitted the advertisements but redacted Ms. Garza's photograph even though they purported to be a woman by the name of "Amy Lovett". (4 RR 62). Trial counsel impeached Ms. Garza's credibility with the exhibits and raised the issue of fabrication, however, whether she was, or was not, an escort at the time of the offense was not an element of the offense. In addition, any extraneous about Ms. Marchand's alleged rape and kidnapping did not logically rebut the defensive theory of fabrication. Even assuming that trial counsel opened the door to the extraneous evidence through cross-examination of Ms. Garza about being an escort, the fact that Ms. Marchand was raped and kidnapped did not make more, or less likely that Ms. Garza was telling the truth about not being an escort at the time of the offense. Therefore, the state's proffered reason for admitting the extraneous offense was not relevant to rebut the defensive theory of fabrication– that Ms. Garza lied about being an escort at the time of the offense – and should not have been admitted for that purpose. As discussed above, any prior rape or kidnapping of Ms. Marchand had no relevance to whether Ms. Garza was fabricating being an escort at the time of the offense. Therefore, the purpose for the state's proffered extraneous failed to provide the trial court with a sufficient legal basis to admit the evidence at trial.

### 4. State Failed to Demonstrate Relevance of Extraneous to Show "Handiwork" of Appellant

Finally, the state argued that Ms. Marchand's testimony was relevant to show the "modus operandi" of Appellant.

> "The specifics of the manner, the type of crime, the way he targeted her and more specifically the specific threat that he made shows identity, a specific modus operandi, the close proximity of where these crimes occurred to each other, which we have the map that we can show, within less than a mile apart, within blocks of each other, within weeks of each other."

(4 RR 108). Trial counsel objected arguing it was not relevant – it was not sufficiently similar to the charged offense—and that its prejudicial value was greatly outweighed by any probative value. (5 RR 7). The trial court stated, (1) "I'm not sure that similarity plays into the fact that the allegation – that the defense is consent but (2) assuming it does, because the Court of Appeals is much smarter than me, is that I'm going to allow in Ms. Marchand because I believe that those are similar." (5 RR 25).

"In the context of evaluating the admissibility of extraneous offenses, *modus operandi* refers to 'a defendant's distinctive and idiosyncratic manner of committing criminal acts.'" *Jackson v. State*, 320 S.W.3d at 882, citing *Owens v. State*, 827 S.W.2d at 914. When evidence of an extraneous is offered to show consent, its relevance is derived from the doctrine of chances. *Daggett v. State*, 187 S.W.3d at 453 n. 18 ("evidence of a remarkably similar act might be admissible to

prove the *corpus delicti* (the crime itself), intent, or lack of consent under 'the doctrine of chances.'"). "Before an extraneous offense is admissible to negate the possibility of accident under Wigmore's "doctrine of chances", such offense must be sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play." *Martin v. State,* 173 S.W.3d at 467, citing Imwinkelried, Uncharged Misconduct Evidence, §§ 5:05, 5:10 (1984). Therefore, to be admissible the extraneous must be so nearly identical in method to the charged offense as to earmark it as the handiwork of the accused. *Owens v. State*, 827 S.W.2d at 917. The characteristics must be so unusual and distinctive so as to be like a signature. *Avila v. State,* 18 S.W.3d at 741, *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1992). Therefore, extraneous evidence is not relevant simply by showing similar characteristics that are common to the type of crime itself, instead the uncharged conduct must reveal the "handiwork of the accused". *Ford v. State*, 484 S.W. 2d 730. Importantly,"[n]o rigid rules dictate what constitutes sufficient similarities, rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or ***any other elements which mark both crimes as having been committed by the same person***." *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008)(emphasis added).

Relying on the state's argument that the extraneous was admissible to prove a lack of consent, the trial court admitted the evidence of Ms. Marchand concluding that it was sufficiently similar to the charged offense and that it was admissible to rebut the defensive theory of consent. (5 RR 25). Here, there are insufficient details that mark the two offenses as "remarkably similar" or as the "handiwork" of a single individual. *Id*. So too, the characteristics of the prior extraneous and the charged offense are not "so unusual as to act as the defendant's 'signature.'" *Jackson*, 320 S.W.3d at 884. Here, there are no distinguishing characteristics common to both crimes that mark it as the signature of one person. While there are similarities, these similarities are common to the type of crime itself, rather than peculiar similarities to both offenses that distinguish it as the acts of one man. *Owens*, 827 S.W.2d at 915, ("The State must show more than the mere repeated commission of crimes of the same type or class…"). Inaddition,  the Court of Criminal Appeals has made clear that, "if extraneous offense evidence is not 'relevant' apart from supporting an inference of character conformity,' it is absolutely inadmissible under Rule 404(b)." *Montgomery*, 810 S.W.2d 386-87.

Here, the state argued at trial that the similarities between the extraneous and the charged offense, which allegedly revealed the "modus operandi" of the Appellant, were as follows:

> "The specifics of the manner, the type of crime, the way he targeted her and more specifically the specific threat that he made shows

identity, a specific modus operandi, the close proximity of where these crimes occurred to each other, which we have the map that we can show, within less than a mile apart, within blocks of each other, within weeks of each other."

(4 RR 107-108).

## C. "The Specifics of the "Manner" or "the Type of Crime"

In *State v. Ford*, the Court "recognize[d] that there will always be similarities in the commission of the same type of crime. That is, any case of robbery by firearms is quite likely to have been committed in much the same way as any other. What must be shown to make the evidence of extraneous crime admissible is *something that sets it apart from its class or type of crime in general*, *and marks it distinctively in the same manner as the principal crime*." 484 S.W.2d at 730 (emphasis added). Much like the robbery example, sexual assault cases will also have similarities because they are in the nature of the offense itself. In order to be admissible to show modus operandi, the similarities must go further to reveal something specific and distinctive about the crimes, such that it reveals an inference of improbability of accident. See *Martin v. State*, 173 S.W.3d at 467.

### 1. "The way he targeted her".

Ms. Garza testified that she merely happened upon the apartment complex where she encountered Appellant. Appellant did not target Ms. Garza. Instead the

testimony revealed circumstances that were borne of opportunity. Ms. Marchand, by contrast, was targeted as she exited a CVS store, but before she entered her car.

### 2. "The specific threat he made…"

The threats made to both women were essentially not to go to the police or they would be hurt. The specifics of the threat were different in each case. Ms. Garza testified Appellant and the other man kept her identifying information to locate her if she went to the police. Ms. Marchand, however, testified that Appellant wrote down information from her phone and threatened to have gang members come after her family.

### 3. "Close proximity of the crimes"

Contrary to the state's argument, which is not evidence, there were no maps or other evidence admitted at trial to show the proximity between where Ms. Marchand was allegedly kidnapped and sexually assaulted and where Ms. Garza was located at the time of her alleged assault.

### 4. "Both offenses occurred within weeks of each other"

The only factor the state argued that provided *some* evidence of similarity between the two offenses was that Ms. Marchand was assaulted two weeks prior to Ms. Garza's alleged attack. This fact alone, however, would not make the two offenses sufficiently similar to be admissible. Because "[t]he similarities between the charged offense and the extraneous offense … were not so unusual or

28

idiosyncratic as to signal conclusively that they were the handiwork of the same person" the trial court abused its discretion in admitting the testimony of Ms. Marchand.

In *Ford v. State*, the Court reversed a robbery conviction where the extraneous was not sufficiently similar to the charged offense to be admissible to show intent. 484 S.W.2d 727 (Tex. Crim. App. 1972). The defendant was involved in a robbery-murder and the state attempted to introduce a supermarket robbery that occurred two months earlier. *Id*. at 729. Although there were similarities, they were neither distinguishing, novel, nor unusual. *Id*. at 730. The robbery-murder involved a tall, black male. *Id*. Both crimes involved pistols and persons were injured in both cases. *Id*. The Appellant allegedly wore purple in both robberies. *Id*. The dissimilarities included the fact that there was two months between the robberies, four men committed one robbery, and only one man committed the other. *Id*. Appellant gained access to one under the pretext that he was looking for work, however there was no evidence that he gained entry to the supermarket in the same way. *Id*. In reversing the trial court's decision, the Court held there was "no distinguishing characteristic[s] common to both crimes. There are similarities, but they are more in the nature of the similarities common to the type of crime itself rather than similarities peculiar to both offense alone." *Id*.

Similarly, the Court reversed the erroneous admission of an extraneous offense in *Owens v. State*, a sexual assault case where the extraneous was not sufficiently similar to show the handiwork of the same person. 827 S.W.2d at 915. The Court held that two incidents of sexual assault, allegedly committed by the defendant, were not so similar as to render evidence of the extraneous admissible where the two offenses were alike only in that they were both sexual assaults against minor females, of approximately the same age, both of whom were the defendant's daughters. *Id*. The Court said,

> When the State seeks to admit extraneous offense evidence under a theory of "system" or modus operandi, "there must be a showing that the extraneous offense which was committed by the defendant was *'so nearly identical in method [to the charged offense] as to earmark them as the handiwork of the accused*.'"

*Id*. at 915 (emphasis added); *Collazo v. State*, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981), quoting E. Cleary, *McCormick's Handbook of the Law of Evidence* 449 (2d ed. 1972).

By contrast, in *Martin v. State*, the Court found the extraneous offense and charged offense were sufficiently similar to be admissible to rebut the defensive theories of consent and lack of intent. 173 S.W.3d at 463. The defendant admitted he falsely claimed to be a law enforcement officer as a ruse to pick up both the complainant and the victim of the extraneous. *Id*. at 467. In addition both women testified they agreed to meet him in residential areas, and that he took both women

30

to a residence to sexually assault them after the initial meeting. *Id*. The Court held these facts –-that he claimed in both cases to be a law enforcement officer to pick up the women, took them to a residential area and sexually assaulted them in a home-- were sufficient to show *modus operandi*, because they were sufficiently distinctive to qualify as an exception to the general rules that preclude the admission of extraneous-offense evidence. *Id*.

The present case does not present the distinguishing characteristics found in *Martin v*. *State*, but instead provide general characteristics that are common to the type of crime committed, similar to the Court's holdings in *Ford* and *Owens*. While an extremely high degree of similarity is not required, the Court of Criminal Appeals has made clear that the relevance of any extraneous evidence derives from the fact that it is sufficiently similar and "so unusual as to act as the defendant's 'signature.'" *Jackson*, 320 S.W.3d at 884, and it must be so identical in method to the charged offense as to earmark it as handiwork of the accused. Even where a case presents some similarities, they must be distinguishing, novel and unusual, *Ford*, 484 S.W.2d at 730, to warrant its admission, because "there will always be similarities in the commission of the same type of crime." *Ford*, 484 S.W.2d at 730. It is not just the similarity of the offenses that permits its admission but that level of sufficiency so as "to signal conclusively that [it is] the handiwork of the same person." *Martin*, 173 S.W.3d at 467; see also *Owens,* 827 S.W.2d at 915-16.

Because the trial court's admission of Ms. Marchand's testimony about an alleged prior extraneous was outside the zone of reasonable disagreement, the trial court abused its discretion.

## D. Rule 403: The Danger of Unfair Prejudice

Even if the trial court properly admitted the extraneous evidence pursuant to Rule 404(b), it still must exclude the evidence if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. TEX.R.EVID. 403; *Montgomery v. State*, 810 S.W.2d at 387. The following factors are balanced to determine whether the trial court abused its discretion in admitting the extraneous offense evidence: (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous offense evidence to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence; (4) the strength of the proponent's need for this evidence to prove a fact of consequence.

### 1. The Strength of the Evidence in Making a Fact More or Less Probable.

As discussed thoroughly above, the first factor weighs against admissibility. To be admissible, the extraneous must be relevant to some theory, other the general proposition that one who commits one crime is prone to commit another. *Ford*, 484 S.W.2d at 729. The trial court admitted the extraneous to to prove consent or to rebut the defensive theory of fabrication operandi of Appellant. Because the

extraneous was not sufficiently similar to the charged offense, it could not have provided the jury with any permissible evidence that would make the issue of consent more or less probable. In addition, the state did not use the evidence for its purported purpose of showing a lack of consent. Instead, the state offered the evidence and argued it to show character conformity. Therefore, the extraneous evidence was not relevant to any fact issue, other than a propensity to commit crime, and it was therefore not relevant because the sexual assault of Ms. Marchand does not make a fact of consequence more or less probable. *Jackson*, 320 S.W.3d at 885.

### 2. The Potential the Extraneous Offense to Impress the Jury in Some Irrational but Indelible Way.

The second factor also falls on the Appellant's side of the ledger. Since the extraneous served no permissible purpose, and because it was a prior sexual assault, it had the very real potential to impress the jury in some irrational but indelible way. All "[e]xtraneous offense evidence is 'inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him.'" *Jackson v. State*, 320 S.W.3d at 889. *Sims v. State*, 273 S.W.3d 291 (Tex. Crim. App. 2008)(quoting *Pollard v. State*, 255 S.W.3d 184, 185 (Tex. App. – San Antonio, 2008), aff'd, 277 S.W.3d 25 (Tex. Crim. App. 2009). Here, the extraneous evidence allowed the jury to find Appellant guilty if it believed he committed the sexual assault of Ms. Marchand,

even if it did not believe Ms. Garza. The prosecutor reinforced this belief in its closing argument by telling jurors, "Just in case you don't believe Irene – that's why we brought in evidence of another girl raped just 2 weeks before." (5 RR 117). Importantly, the prosecutor's argument also never limits the jury's consideration of the extraneous to whether or not Ms. Garza consented to the sexual assault with Appellant. Instead the prosecutor argued this evidence could be used to prove Appellant committed the charged offense, thus the sexual assault of Ms. Marchand "had a significant potential 'to lure the person in order to show that he acted in conformity therewith.'" *Jackson v. State*, 320 S.W.3d at 886, citing TEX.R.EVID. "As stated by the Texas Court of Criminal Appeals: 'if extraneous offense evidence is not 'relevant' apart from supporting an inference of character conformity,' it is absolutely inadmissible under Rule 404(b). Id. at 885; *citing Montgomery v. State,* 810 S.W.2d 386-87.

**3. The Amount of Time the Proponent Needed to Develop the Evidence.**

The third factor does not fall in favor of admission since Ms. Marchand's testimony distracted the jury from the charged offense for a significant period of time during trial. This evidence was then reiterated during the state's closing argument, where it was argued that if the jury did not believe the charged offense occurred, they could substitute the testimony of Ms. Marchand for the testimony of Ms. Garza. The testimony outside the presence of the jury and in front of the jury

spanned approximately 50 pages furthering the conclusion that the time to develop the evidence was significant.

**4. The Strength of the Proponent's Need for this Evidence to Prove a Fact of Consequence**.

The fourth and final factor weighs heavily against admission of the extraneous to prove consent or to rebut the defensive theory of fabrication. As discussed, the only evidence contesting consent was based on the cross examination of Ms. Garza about her work as an escort. (5 RR 26). A jury could reasonably infer a lack of consent from the evidence introduced at trial that Ms. Garza: (1) called police to report the attack; (2) went to the hospital for a rape kit; (3) had physical injuries consistent with an attack; and (4) her personal identification was taken. Therefore, the prosecutor did not need the additional evidence of a prior sexual assault to prove a fact of consequence in this trial. This is particularly true since the relevance of this evidence to the issue of consent hinged on whether the sexual assault of Ms. Marchand was sufficiently similar to show the "signature" or modus operandi of Appellant. Because it was not sufficiently similar, it only provided jurors with evidence of Appellant's propensity to commit sexual assaults, an impermissible purpose.

For all the foregoing reasons, the trial court's decision to admit the extraneous was outside the zone of reasonable disagreement because the probative value of the extraneous evidence was substantially outweighed by the danger of

unfair prejudice. Thus, the extraneous would not be admissible to show a lack of consent by the complainant or rebut the defensive theory of fabrication, and therefore such evidence did not make a fact of consequence more or less probable.

## E. The Improper Admission of Extraneous Evidence Affected Appellant's Substantial Rights

If this Court concludes that the trial court erroneously admitted the extraneous evidence, it must determine whether such error was harmless. The erroneous admission of an extraneous does not constitute constitutional error so this Court applies Texas Rule of Appellate Procedure, Rule 44.2(b). Therefore, any error "that does not affect substantial rights must be disregarded." TEX.R.APP.PROC. 44.2(b). The rule requires this Court to determine if this error had "a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 270 (Tex. Crim. App. 1997). If this Court has "grave doubt" that the result was free from the substantial influence of the error, it must treat the error as if it did. *United States v. Lane*, 474 U.S. 438, 449 (1986); *Burnett v. State*, 88 S.W.3d 633, 638 (Tex. Crim. App. 2002)("In cases of grave doubt as to the harmlessness the [appellant] must win."); *Brown v. State*, 978 S.W.2d 708, 716 (Tex.App.–Amarillo 1998, pet. ref'd)(emphasis in original)("The determination of harm is little more than an educated guess. What the jurors actually thought persuasive or actually considered is seldom, if ever, available to us. So, we ... assess potentialities.").

Appellant is not required to prove harm, instead it is this Court's duty to review the record and assess harm. *Johnson v. State*, 43 S.W.3d 1, 4-6 (Tex. Crim. App. 2001). The proper inquiry is whether the error substantially swayed or influenced the verdict. *Booker v. State*, 103 S.W.3d 521, 538 (Tex. App.– Fort Worth 2003, pet. ref'd). This Court must consider the erroneous admission of the extraneous in the context of the entire record, and not merely whether there was sufficient, or even overwhelming evidence of guilt. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In conducting its Rule 44.2(b) harm analysis, this Court cannot lose sight of two interrelated considerations. First, if there is any doubt that this error affected a substantial right, it is dispelled by the prosecutor's closing argument that urged the jury to convict Appellant based not on their belief that Appellant committed the charged offense, but instead asked jurors to find him guilty based on the extraneous offense evidence that he committed another rape just two weeks prior. (5 RR 117).

This Court has long held that prosecutorial emphasis on erroneously admitted evidence at trial and in final argument, is powerful evidence that an error affecting a substantial right warrants reversal. See *Delane v. State*, 369 S.W.3d 412 (Tex. App – Houston [1st Dist.] 2012)(misapplication of rules of evidence affected substantial rights where State emphasized erroneously admitted evidence during final argument); *Nelms v. State*, 834 S.W.2d 110, 114 (Tex.App. – Houston

[1st Dist.] 1992, pet. ref'd)(same); *see also Rhyne v. State*, 387 S.W.3d 896, 906 (Tex. App.– Fort Worth 2012, no pet.)(erroneous admission of breath test result affected substantial rights when State advised jury in summation that breath-test evidence was "best evidence" Appellant was intoxicated.").

### 1. Severity of the Misconduct

There can be little doubt that the introduction of Ms. Marchand's alleged rape to prove Appellant committed the sexual assault of Ms. Garza, would adversely affect the jury's verdict. The prosecutor's final argument improperly directed the jury to convict Appellant based, not on the evidence at trial, but instead on the impermissible evidence that he kidnapped and raped another woman just two weeks prior. Considering the lack of unique similarities between the two offenses, the extraneous was not relevant to any issue at trial, including lack of consent by the complainant or to rebut the defensive theory of fabrication. Since the extraneous was not relevant to any fact issue of consequence, it carried little probative value and tended to impress the jury with the fact that Appellant acted in conformity with his character, an impression the law seeks to avoid. See TEX.R.EVID. 402; *Cobb v. State*, 503 S.W.2d 249, 250 (Tex. Crim. App. 1973). Because "[e]xtraneous offense evidence is 'inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him,'" it is unlikely this evidence had only a slight effect on

38

the jury's deliberation. *Jackson* at 889. *Sims v. State*, 273 S.W.3d 291 (Tex. Crim. App. 2008)(quoting *Pollard v. State*, 255 S.W.3d 184, 185 (Tex. App. – San Antonio, 2008), aff'd, 277 S.W.3d 25 (Tex. Crim. App. 2009).

### 2. Steps Taken to Cure the Misconduct

As discussed above the State was permitted to tell jurors in final argument that, "Just in case you don't believe Irene – that's why we brought in evidence of another girl raped just two weeks before." (5 RR 117). The State was also allowed to argue that: "his DNA was in both women – women who never met," "that both girls were raped at different locations" and "that DNA evidence doesn't lie." (5 RR 117).

Although the trial court did give jurors a limiting instruction[4] after the state rested, it did not instruct the jury that it should only consider the evidence to rebut the defensive theory of fabrication or to show a lack of consent by the complainant, if it did. (5 RR 87-88). The trial court also failed to limit the jury's consideration of the extraneous evidence in the jury charge. Jurors were provided with the

---

[4] The Court:

    "And before you do that, ladies and gentlemen, I have some instructions for you regarding the testimony concerning the defendant's involvement in another act.

    You are instructed that if there is any evidence in this case regarding the defendant's committed an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, knowledge or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment, and for no other purpose." (5 RR 86-87).

standard list of 404(b) exceptions, however the court never identified the limited purpose the evidence was to be considered in this case; the lack of consent or to rebut the defensive theory of fabrication. An instruction that tells jurors not consider inadmissible evidence, except for a limited purpose, still instructs jurors to consider inadmissible evidence. *Jackson*, 320 S.W.3d at 889. Here, the evidence should not have been considered for any purpose during the guilt/innocence phase of trial therefore, this Court should not hold that the limiting instruction renders the error harmless.

The Court of Criminal Appeals held "that an appellate court cannot affirm a trial court's decision to admit extraneous—offense evidence to rebut a defensive theory if the trial court failed to instruct the jury, in the trial court's limiting instruction, on the extraneous evidence admissibility to rebut a defensive theory." *Owens*, 827 S.W.2d at 917, see *Curtis v. State*, 89 S.W.3d 163, 177 (Tex. App. – Fort Worth 2002, pet ref'd)(refusing to consider whether admission of extraneous offense evidence to rebut defensive theory was proper because jury was not instructed on that basis). The *Owens* Court said this is because, "[a]bsent such additional instruction, there is no way for an appellate court to know whether the jury properly applied the evidence of appellant's 'system' to rebut the weight or credibility of appellant's 'frame-up' theory or relied on it for an improper basis such as character conformity." *Owens*, 827 S.W.2d at 917. Because the trial court

40

did not instruct the jury to limits its consideration of the extraneous to rebut the defensive theory of fabrication or to show a lack of consent by the complainant, effectively no methods were taken to cure this harm.

### 3. Certainty of Conviction Absent Error

The Court of Criminal Appeals has stressed that "an appellate court should consider overwhelming evidence of guilt, but that should be only one factor in the analysis." *Motilla v. State*, 78 S.W.3d 352, 355, 357 (Tex. Crim. App. 2002). As previously stated, extraneous evidence is inherently prejudicial because it forces the defendant to defend himself against charges not before the jury. Therefore, the improper admission of an extraneous offense tends to be harmful because it encourages a jury to base its decisions on character conformity, rather than evidence that the defendant committed the offense charged.

Although evidence suggests Appellant committed the sexual assault and aggravated kidnapping of Ms Garza, it was not without contradiction. The evidence showed that Ms. Garza claimed she was not working as escort in the six months prior to the offense however evidence was also admitted that showed she did work as an escort in the months prior to the offense. Extraneous evidence of the prior sexual assault of Ms. Marchand likely had a profound effect on the jury's decision to believe or disbelieve Ms. Garza. The allegation that Appellant committed the sexual assault and aggravated kidnapping of Ms. Marchand likely

influenced the jury's ultimate conclusion that Ms. Garza was a credible witness. The State's closing argument emphasizing this connection between Ms. Marchand and Ms. Garza, which urged jurors to consider Appellant's tendency to act in conformity with his character, reinforces the likelihood that this improper evidence played a significant role in the jury's deliberations.

Based on this record, this Court cannot say with fair assurance that the erroneous admission of the extraneous that Appellant committed a prior sexual assault, and the state's emphasis on this evidence in urging jurors to convict him, not for the sexual assault of Ms. Garza, but because he acted in conformity with his character, did not influence jurors, or had but a slight effect on their verdict. *See* e.g., *Pollard v. State*, 255 S.W.3d 184, 190 (Tex. App.– San Antonio, 2008), aff'd, 277 S.W.3d 25 (Tex. Crim. App. 2009)("[W]e conclude the State's emphasis of the murder conviction prejudiced the jury's decision-making, causing a substantial and injurious effect or influence on the jury's verdict..."); *West v. State*, 124 S.W.3d 732, 736 (Tex. App.– Houston [1st Dist.] 2003, pet. ref'd)(State's emphasis of error during final argument was powerful indicia that trial court's misapplication of rules of evidence affected defendant's substantial rights). This Court should hold that the introduction of the extraneous was harmful and sustain Appellant's point of error.

The judgment of conviction entered below must be reversed and the cause

remanded for a new trial.

## CONCLUSION AND PRAYER

Appellant respectfully prays that this Honorable Court sustain the appellate contention here advanced, reverse the trial court's order and hold the trial court abused its discretion in admitting the extraneous offense in violation of Texas Rules of Evidence Rules 404(b) and 403 because the prior sexual assault was not relevant for the permissible purpose proffered by the state, did not tend to make any issue of fact of consequence more or less likely, and was not sufficiently similar to show the modus operandi of Appellant.

RESPECTFULLY SUBMITTED,

 */s/ Carmen Roe*

_____
**CARMEN ROE**
TBN: 24048773
440 Louisiana, Suite 900
Houston, Texas 77002
713.236.7755
713.236.7756 Fax
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Appellant's Brief was served on the Harris County District Attorney, Appellate Division, 1201 Franklin, 6th Floor, Houston, Texas 77002 by electronic filing, on 20th day of February, 2015.

*/s/ Carmen M. Roe*

_____

**CARMEN M. ROE**


## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 8,441 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Carmen M. Roe*

_____

**CARMEN M. ROE**